28 563
75 14
28 563
52 LRA 710n
52 LRA 719n

## WINNER and another v. BAUMAN.

ACCOUNT BOOK: (1) *As evidence of credits given by the party introducing it.* (2) *As evidence of the payment of money by him.*

1. An account book, after the party introducing it has made the oath required by statute (R. S., ch. 137, sec. 88), is competent evidence that he bought of the opposite party any goods therein credited as so purchased, but it is *not* evidence that he did not purchase *other* goods not so credited.

2. The admission of such book as evidence generally of the amount of goods purchased by such party, is an immaterial error, where it appears that the opposite party is credited therein with as large an amount for such goods as he himself claims credit for.

3. Such an account book being, under the statute, "*prima facie* evidence in proof of the charges therein contained," but being made inadmissible as evidence of "any item of money delivered at one time exceeding five dollars" (R. S., ch. 137, sec. 89), the admission thereof as evidence of the payment of moneys in larger sums (instead of merely al-

lowing it to be used as memoranda for refreshing the witness's memory) gives the party introducing it the advantage (forbidden by the statute) *of prima facie* proof which cannot be impeached (*Winne v. Nickerson*, 1 Wis., 1), and is fatal error.

APPEAL from the Circuit Court for *Milwaukee* County.

The plaintiffs appealed from a judgment in favor of the defendant. The case is stated in the opinion.

*A. C. Fraser*, for appellants, as to the conditions under which and the purposes for which account books may be received in evidence, and their effect when received, cited R. S., chap. 137, secs. 88, 89; *Schettler v. Jones*, 20 Wis., 412, (414); *Winne v. Nickerson*, 1 id., 1 (7); *Nickerson v. Morin*, 3 id., 243 (244); *Price v. Earl of Torrington*, 1 Smith's L. C. (Am. ed.), 390 (407), and cases there cited, &c. To the point that such books are never received as evidence in favor of a buyer to prove the amount of goods purchased of the other party, he also cited *Summers v. M'Kim*, 12 S. & R., 405; *Cummings v. Nichols*, 14 N. H., 420 (427); *Keim v. Rush*, 5 Watts & Serg., 377 (379); *McKewn v. Barksdale*, 2 Nott & McCord, 17.

Other points discussed by counsel became unimportant in the view taken by the court.

LYON, J. It appears that the parties had a running account, the items of which consisted mainly of goods purchased by the defendant of the plaintiffs, and of payments made on account thereof. The plaintiffs claim that on the 21st of September, 1868, the defendant was indebted to them on such account in the sum of $5,643.30. On that day the defendant executed to the plaintiffs on account thereof his three promissory notes for $1,881.10 each, due in forty-five, sixty, and ninety days respectively. The defendant paid the two notes which first became due, and also two hundred dollars on the one which was made payable in ninety days. This action was brought to recover the unpaid balance of said last mentioned note, and for certain merchandize purchased by the defendant of the plaintiffs after said notes were given.

Winner and another vs. Bauman.

The defense to the action set forth in the answer is to the effect that the notes were given upon the representation of the plaintiffs that the defendant was indebted to them on such account an amount equal to the aggregate of such notes; that he had not examined the account, and was ignorant of the true state of it; and that the plaintiffs agreed to adjust it at some future time. The answer further alleges that he only owed the plaintiffs $1,086.94 in fact, when he executed the notes, and that he has overpaid them $2,875.26. He admits the purchase of goods of the plaintiffs, after the notes were given, to the amount of $442.41, for which he is liable to account to them, and demands judgment for $2,432.85, and that the note sued upon be cancelled.

On the trial of the action in the circuit court, the defendant produced certain account books purporting to contain the account of all the goods and merchandise which he had purchased of the plaintiffs, and also of the payments made by him to the plaintiffs on account of such purchases, each of said payments being more than five dollars; and made the oath required by the statute (R. S., ch. 137, sec. 88) to authorize the admission of account books in evidence. Such books were then offered and received in evidence. An objection by the plaintiffs that the same were not competent evidence of the amount of goods purchased of the plaintiffs, or of any payment to them exceeding five dollars, was overruled by the court. The court also instructed the jury that such account books were regularly examined and introduced in evidence, and were *prima facie* evidence or proof of the charges therein contained; and refused to qualify the instruction in respect to the items contained therein of goods purchased by the defendant of the plaintiffs, and of moneys paid to them exceeding five dollars at any one time, as requested by the plaintiffs.

The defendant had a verdict for $2,178.06, upon which, after a motion to set it aside and for a new trial had been denied by the court, judgment was entered against the plaintiffs; and from such judgment they have taken an appeal to this court.

Was it error to admit the account books of the defendant in evidence, for the purposes of showing the amount of goods purchased, and the sums of money paid therefor to the plaintiffs?

I. The credits to the plaintiffs for goods sold and delivered by them to the defendant, is evidence against him tending to show that he purchased such goods of the plaintiffs on credit. But these credits are not evidence that the defendant purchased no other goods of the plaintiffs. Were there any controversy as to the amount of the goods so purchased, we should be called upon to decide whether the admission of the books in evidence, without qualification or restriction as to their effect, left the jury at liberty to infer that they were evidence that they contained credits for *all* of the goods thus sold and delivered. But there is no such controversy in the case. The judge stated in his charge, and doubtless stated correctly, that the books show the sale and delivery of goods before the notes were given, to the amount of $17,262; and the plaintiffs only claim that they sold the defendant goods before that time to the amount of $16,088.40. It therefore becomes entirely immaterial to inquire whether it was or was not error to admit the books as evidence of the amount of goods purchased.

II. The real contest between the parties relates to the amount of money paid by the defendant on account of such purchases, before the notes were given. The plaintiffs claim that the amount so paid is only $9,000, and they concede that the defendant is entitled to a further allowance of $1,404.90 for waste or shortage, making in all a credit of $10,404.90. On the other hand, the defendants claim, and their account books which were admitted in evidence by the court show, that the amount of their cash payments, exclusive of such allowance, was $14,500.

The statute provides that account books "shall not be admitted as testimony of any item of money delivered at one time, exceeding five dollars." R. S., ch. 137, sec. 89. The

preceding section makes account books, when the same shall be received, "*prima facie* evidence in proof of the charges therein contained." (Sec. 88.)

The account books of the defendant, having been received and admitted in evidence by the court, without qualification, were *prima facie* proof that the defendant had paid the plaintiffs $14,500 in cash, on account of the goods which he had purchased of them, previous to the time when he executed the notes, although each payment exceeded five dollars.   The defendant was thus allowed to make *prima facie* proof of the payment of this large amount of money, in a manner which is prohibited by the law.   Clearly this was error.   *Hart v. Livingstone*, 29 Iowa, 217.

But it may be claimed, that inasmuch as the defendant testified independently of the books, that he made such payments, the error is immaterial ; that although the books were, in form, received in evidence, it was for the jury to decide what weight should be given to them ; and that they amounted to nothing more than memoranda to which the defendant, when testifying, might properly refer, to refresh his recollection.   See *Schettler v. Jones*, 20 Wis., 412 ; *Riggs v. Weiss*, 24 id., 545.

There might be force in these positions if the statute merely provided that the books, when admitted, should be received as testimony, without also providing the effect that should be given to them.   But the statute provides what effect they shall have when so received.   It makes them "*prima facie* evidence in proof of the charges therein contained."   Had there been no testimony in relation to the payments except these books, the jury would have been bound to find that the payments therein charged had been made, even though they discredited entirely the testimony of the defendant.   The case of *Winne v. Nickerson*, 1 Wis., 1, is authority upon this point.   It was there held that where an account book had been received in evidence, testimony to impeach the character of the party whose book was so received and who had made the preliminary oath required

by the statute, and which testimony was offered for the purpose of impeaching such account book, was inadmissible; and this, for the reason that the law prescribed what effect the book should have as evidence, entirely irrespective of the character of the book or of the party who presented it, and who made the entries in it.   The court finds an analogy in the effect which, under the old chancery practice, was given to a sworn answer to a bill in equity, in cases where the answer was responsive to the bill, and where the bill required an answer on oath.   The effect of such answer as testimony was entirely unaffected by the character of the defendant who verified it.   He might be utterly unworthy of credit, yet the legal·effect of the answer was the same as though he were a man of unimpeachable integrity.

In the present action the defendant's case was greatly strengthened in regard to the proof of payments, and on that question he was in a better position before the jury than he would have been in had the books been rejected, or had they been received with the proper restrictions, not as account books under the statute, but as mere memoranda.

We have not had the benefit of an argument or a brief on behalf of the defendant, but we have nevertheless carefully considered the case, and we see no escape from the conclusion that a material error was committed on the trial by receiving the account books of the defendant as evidence under the statute, which is fatal to the judgment.

*By the Court.* —The judgment of the circuit court is reversed, and a new trial awarded.

On a motion for a rehearing, Messrs. *Palmer, Hooker v. Pitkin,* for the respondent, argued that the defendant's accounts were admisable as *memoranda,* and that there was nothing in the record to show that they were offered, admitted or treated as evidence of higher character.

The motion was denied.